IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                             CR. No. 08-995 JP

ISSAC JACOB SOZA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On August 19, 2009, a hearing was held on Defendant's Motion to Suppress Evidence Resulting from the Unlawful Search of his Vehicle (Doc. No. 28).  Assistant United States Attorney David Walsh represented the Plaintiff at the hearing; Defendant was personally present and was represented by Assistant Federal Public Defender Benjamin A. Gonzales.  The Plaintiff, Government, presented the testimony of Bernalillo County New Mexico Sheriff Department Detective Luis Funes and Deputy Sheriff J.J. Zunega and introduced exhibits without objection.  Defendant presented the testimony of his wife, Nancy M. Soza.

Having heard the testimony of the witnesses and having considered the exhibits, the Court makes the following

    FINDINGS OF FACT:

Around 3:50 a.m. on November 7, 2007, Detective Funes observed the Defendant, Issac Jacob Soza, the sole occupant of a Mustang vehicle, driving in excess of the posted speed limit of 25 miles per hour.  In addition, Detective Funes saw the Defendant round a corner in an extremely fast manner that caused the car to lean to the side and gave to Detective Funes the impression that the driver almost lost control of his vehicle.  Because Detective Funes was

unable to clock the actual speed of Defendant's vehicle, he could not issue a citation for speeding; however, Detective Funes could have charged the Defendant with careless driving. Detective Funes stopped the Defendant who admitted that he had been speeding. When Detective Funes asked Defendant to produce his driver's license, the Defendant handed Detective Funes an identification document, not a driver's license.

While the Defendant remained in his Mustang vehicle, Detective Funes went to his patrol car and did an N.C.I.C. (National Crime Information Center) check which revealed that there was an outstanding felony arrest warrant for the Defendant and that Defendant's driver's license had been revoked. Detective Funes then called for backup law enforcement and Deputy Sheriff J.J. Zunega arrived shortly thereafter with a trainee who he was instructing.

Detective Funes then arrested the Defendant based on the outstanding felony warrant for arrest and the fact he was operating a vehicle without a driver's license. Detective Funes handcuffed the Defendant and placed him in Detective Funes's patrol car.

Next, Detective Funes searched Defendant's vehicle with the good faith belief that he was lawfully searching the vehicle incident to an arrest. Detective Funes found on the floorboard in front of the driver's seat a baggie that contained methamphetamine and found a loaded handgun under the driver's seat. Detective Funes removed the methamphetamine and the gun and secured them in his patrol car.

Then, Detective Funes and the trainee performed an inventory search of Defendant's vehicle with Detective Funes reporting the items he found and the trainee making a list of those items on an inventory sheet. The search took not longer than five minutes. It was Detective Funes's understanding, based on his training and experience, that at the time he performed the search of Defendant's vehicle on November 7, 2007, the law permitted a search of this nature

incident to an arrest even though the person arrested had been secured and was not a threat to the safety of the officer or in a position to retrieve evidence from the arrestee's vehicle and even though the search was unrelated to the reason for stopping the vehicle.

Detective Funes made a decision to have Defendant's vehicle towed from the point of stop instead of trying to find a responsible driver who could come to the area to pick up the vehicle. The Defendant did not identify to Detective Funes anyone who could come to the scene of the stop and take the vehicle. Detective Funes did not ask the Defendant if there were a responsible driver who could, in a reasonably short period, come to get the vehicle.

The standard operating procedures manual of the Bernalillo County Sheriff's Department, Section 311.00, states, in pertinent part, that a stopped vehicle is to be towed only "when the driver has been incapacitated, hospitalized, arrested, and/or when the vehicle cannot be released to a responsible party." Based on their training and experience, both Detective Funes and Deputy Sheriff Zunega have interpreted this statement to mean that it is within the discretion of a law enforcement officer to decide, under the prevailing circumstances, whether a vehicle should be towed or whether it should be released to a responsible person to drive from the scene.

Detective Funes explained that in the instance involving the Defendant, he decided to have the vehicle towed because the stop occurred in the very early morning hours when he would not expect someone to be able to come promptly to the scene to pick up the vehicle and because the information that he had indicated that the Defendant lived far from the area where he was stopped. The identification document Defendant had provided showed an address in the North Valley of Albuquerque; the stop occurred quite a long distance away in the South Valley. The vehicle registration for the Mustang the Defendant was driving showed an address many miles distant in the East Mountains. Because the stop occurred in the early morning hours and

because of the area in which the stop was made, Detective Funes believed that the vehicle should be removed promptly from the scene of the stop and he made the decision that calling a tow truck was the best way to accomplish that. In addition, Detective Funes was concerned that, based on his experience, a person recommended by a driver to pick up the driver's vehicle often showed up a long time after being notified or did not have a proper license or was not in an appropriate condition to operate the vehicle. Hence, under all the circumstances confronting him, Detective Funes reasonably and in good faith felt that calling for a tow truck was the best option.

Despite the testimony of Nancy Soza, the Court finds that even if the Defendant had identified Nancy Soza to Detective Funes as a responsible person who could come to the scene and drive his vehicle, she would not have been able to do so within a reasonable time.

DISCUSSION

Defendant contends that Detective Funes violated the Fourth Amendment by searching his vehicle without a warrant and that the gun and ammunition should, therefore, be suppressed.[1] Defendant argues specifically that the search was not a lawful search incident to arrest, the search was not a lawful inventory search, the gun and ammunition would not have been inevitably discovered during a lawful inventory search, and that Detective Funes did not have a good faith basis for the search. The Government asserts, however, that the search was a lawful inventory search, and in the alternative, the Government contends that the gun and ammunition would have inevitably been discovered in an inventory search. The Government further argues that the good faith exception to the exclusionary rule applies.

---

[1] Defendant was indicted on May 13, 2008 on one count of a felon in possession of a firearm and ammunition. *See* 18 U.S.C. §§922(g)(1) and 924(a)(2).

A.  Search Incident to Arrest

Defendant correctly maintains that under *Arizona v. Gant*, 129 S.Ct. 1710 (2009), a recent United States Supreme Court case decided after Detective Funes conducted the search at issue here, the warrantless search of Defendant's car did not come under the search incident to arrest exception to the search warrant requirement.

In *Gant*, after the defendant "was arrested for driving with a suspended license, handcuffed, and locked in the back of a patrol car, police officers searched his car and discovered cocaine in the pocket of a jacket on the backseat."  The United States Supreme Court held that this search was unreasonable and not a search incident to an arrest.  The United States Supreme Court explained that

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

*Id*. at 1723-24.

Although Detective Funes violated the Fourth Amendment by searching Defendant's vehicle incident to his arrest without a search warrant, the Government, nonetheless, contends that the search was a lawful inventory search and that the inevitable discovery and good faith exceptions to the warrant requirement of the Fourth Amendment apply.

B.  Inventory Search

Investigative searches for evidence of a crime must comply with the Fourth Amendment. Inventory searches, however, are not "investigative searches because they serve three administrative purposes: 'the protection of the owner's property while it remains in police

custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger.'"  *United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir. 2003)(quoting *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)(internal citations omitted)).  Because of the administrative nature of inventory searches, those kinds of searches need not be supported by a warrant or probable cause.  *Id*.  Inventory searches are lawful only if certain conditions are met.  First, inventory searches must be conducted according to a standardized procedure.  *Id*.  Second, an inventory search must fulfill administrative purposes, i.e., an inventory search must not be used as an excuse to rummage for incriminating evidence.  *Id*.

Defendant argues that a lawful inventory search did not occur in this case because Detective Funes did not follow Section 311.00 of the standard operating procedures manual of the Bernalillo County Sheriff's Department. Defendant maintains (but did not testify) that had Detective Funes asked him if there were a responsible party who could come to remove the vehicle, he would have told Detective Funes to call Nancy Soza to get the vehicle. In regard to the meaning of Section 311.00, Detective Funes and Deputy Zunega were trained to use their experience and discretion to decide when it would be reasonable to tow a vehicle or to release a vehicle to a responsible person.  Considering the time of the stop and the location of the stop in relation to the addresses on the identification document and the vehicle registration, the Court concludes that Detective Funes did not abuse his discretion by calling for a tow truck. Moreover, the Court notes that Defendant did not ask Detective Funes to call anyone to retrieve the vehicle.  Even if Defendant had asked Detective Funes to call Nancy Soza to get the vehicle, Detective Funes would have still been within his discretion to call a tow truck instead due to Nancy Soza's inability to get to the scene of the stop within a reasonable time.  These facts

demonstrate that Detective Funes followed a standardized operating procedure in deciding to call a tow truck and in consequently conducting an inventory search. Furthermore, the purpose of the search of the vehicle was administrative in nature, i.e., to determine the contents of the vehicle prior to towing. Because the Court has decided that Detective Funes engaged in an inventory search that was lawful when Detective Funes performed it, there is no need to address the inevitable discovery issue which is related to the inventory search.

      C.  Good Faith Exception

Finally, the Government contends that the good faith exception to the exclusionary rule applies because *Gant* had not been decided at the time of the search and Detective Funes was following established Tenth Circuit law. The Tenth Circuit recently addressed the very same good faith question in *United States v. McCane*, ___ F.3d ___, 2009 WL 2231658 (10th Cir.). The *McCane* case is factually very similar to this one. In *McCane*, the defendant was stopped for a suspected traffic violation. *Id.* at *1. The defendant also had a passenger in his car.[2] The officer determined that the defendant was driving under a suspended license and asked the defendant to exit the car. The officer then arrested and handcuffed the defendant who was placed in the patrol car. *Id.* Defendant's passenger was also placed in the patrol car. *Id.* The officer next called dispatch to request a tow truck for the vehicle. *Id.* While waiting for the tow truck, the officer searched the passenger compartment of the defendant's car and found a loaded firearm. *Id.* at *2. As in this case, the defendant was charged in federal court with being a felon in possession of a firearm. *Id.* at *1.

---

[2]The fact that there was a passenger was not determinative of the outcome of the case.

The defendant in *McCane* subsequently filed a motion to suppress the firearm as fruit of an unlawful search.  The district court denied the motion to suppress based on Tenth Circuit law which allowed a search of a vehicle incident to arrest even if the defendant was already restrained and in the patrol car.  On appeal, the Tenth Circuit determined that the district court erred in concluding that the search was lawful as a search incident to arrest because of the United States Supreme Court's ruling in *Gant*, which had been decided after the district court had denied the motion to suppress.  The Tenth Circuit, however, affirmed the district court's decision based on the good faith exception.

The Tenth Circuit first acknowledged that pre-*Gant* Tenth Circuit precedent supported the district court's conclusion that the officer lawfully searched the vehicle incident to an arrest.  Next, after discussing several United States Supreme Court cases on the topic, the Tenth Circuit held "that it would be proper for this court to apply the good-faith exception to a search justified under the settled case law of a United States Court of Appeals, but later rendered unconstitutional by a Supreme Court decision."  *Id*. at \*6.  Consequently, the Tenth Circuit concluded that it will not "apply the exclusionary rule when law enforcement officers act in objectively reasonable reliance upon the settled case law of a United States Court of Appeals.  The good-faith exception to the exclusionary rule applies in this case.  The district court therefore properly denied the motion to suppress."  *Id*.  It is clear from the *McCane* case that the good-faith exception would also apply here and that the motion to suppress should be denied for that reason as well.[3]

---

[3]Defendant argues in his reply that Detective Funes did not act in good faith because he violated the standard operating procedures for towing vehicles by not calling Nancy Soza to retrieve the vehicle.  This argument fails, however, because Detective Funes initially had good faith in conducting a search of the vehicle incident to arrest.

IT IS ORDERED that Defendant's Motion to Suppress Evidence Resulting from the Unlawful Search of his Vehicle (Doc. No. 28) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE